## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TERRY L.S. DORSEY, #193-579          :

      Plaintiff          :

   v          :          Civil Action No. GLR-11-2723

J. PHILLIP MORGAN, *Warden*, et al.          :

      Defendants          :

## MEMORANDUM

Pending are Terry L.S. Dorsey's ("Dorsey") prisoner civil rights Complaint[1] and motions to dismiss or, in the alternative, for summary judgment filed by Defendants, Corizon, Inc., f/t/a Correctional Medical Services, Inc., Lauri Russell, and Ava Joubert, M.D. (collectively the "Medical Defendants") (ECF No. 14),  and Defendants former Warden J. Phillip Morgan, former Assistant Warden Harry Murphy, former Chief of Security Michael Thomas, and Traffic Officer SGT Brian  Hammons (collectively the "State Defendants") (ECF No. 24).  Dorsey has replied. (ECF Nos. 19, 30 and 32).  The Medical Defendants have filed a surreply (ECF No. 20).  The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 (D. Md. 2011), no hearing being necessary.  For the following reasons, Defendants' motions for summary judgment will be granted.[2]

## BACKGROUND

### A.  Plaintiff's Claims

Dorsey seeks relief pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act. He claims that corrections and medical staff denied him proper medical attention, acted with

---

[1]   The claims herein arose during the time Dorsey was an inmate at Western Correctional Institution in Cumberland, Maryland.  He is currently confined at the Maryland Correctional Institution-Hagerstown.

[2]  The pleading will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because materials outside the four corners of the pleadings have been considered.  See Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007).

deliberate indifference to his serious medical problems and disabilities, and failed to assign him to an upper bunk and a handicap accessible cell.

Dorsey, who has diagnosed chronic back and hip problems, claims that from October to November 2010, he was improperly assigned to a top bunk in a cell at WCI. Complaint, Part III. On October 28, 2010, Dorsey fell from his top bunk and further hurt his hip and back. He states that he wrote to Warden J. Phillip Morgan and Dr. Ava Joubert about his balance problems and fall, but nothing was done in response. Subsequently, on November 22, 2010, Dorsey fell down "at least (7) seven or (6) six steps." Id. He claims his cane went "underneath" him and further injured his lower back. Id. Dorsey was placed on a stretcher and taken to the medical unit. He claims that he was taken to the medical unit at approximately 4:30 a.m. and was not seen by a medical provider until sometime around noon. Dr. Joubert examined Dorsey and admitted him to the infirmary for x-rays. Dorsey remained in the infirmary until November 24, 2010. See id.

Dorsey was subsequently assigned to a bottom bunk on a bottom tier cell, but the cell, his restroom, and shower lacked handrails. See id. Dorsey complained to Lauri Russell, Medical Administrator at WCI about the lack of handrails. See id. He claims Ms. Russell discriminated against him by finding that he was not wheelchair dependent and, therefore, ineligible for transfer to a different cell or facility. See id.

As relief, Dorsey requests compensatory damages of $5.4 million from each Defendant and punitive damages in the amount of $250,000 from each Defendant. See id. He also asks the Court to order that he be assigned to housing appropriate to his disability. See id.

**Defendants' Exhibits**

The Medical Defendants have submitted verified exhibits which show that Dorsey first complained in May of 2009 of left knee pain sustained from a fall. Dorsey was given a steroid

injection on December 30, 2009, which he later reported was ineffective.  X-rays taken on August 11, 2009 and April 13, 2010 were normal.  ECF No. 14, Exhibit B.   Upon physical examination, Dorsey winced and grimaced when his knee was palpated but showed no focal tenderness.  See id.

On November 24, 2010, Dorsey reported that he fell on stairs when his right leg "gave out" and he could not use his cane to support himself.  X-rays showed no acute fracture, dislocation or subluxation.  He was given bottom bunk status.  Exhibit C.  In March 2011, Dorsey was given a course of physical therapy.  Exhibits D-F.

On October 20, 2011, Dorsey was reauthorized for a cane and bottom bunk status.  It was determined that assignment to a handicap shower was not medically indicated. [3]  Exhibit  E.  An x-ray taken in October 2011, showed no significant change from prior films.  See id.

On November 29, 2011, Deidre Mull, a nurse practitioner, wrote that Dorsey did not meet criteria for assignment to a closer housing unit.  Exhibit F.  She observed that Dorsey used a cane, ambulated without problem, and was prescribed Neurontin, Ibuprofen and Baclofen for his hip and back pain.  See id.  She added that exercise, i.e. a short walk to the mess hall, was beneficial for him.  See id.

The Medical Defendants have also submitted Lauri Russell's affidavit in which she states "in my role as the Health Services Administrator, I was not responsible for making diagnoses, providing medical care, or determining the medical necessity of any treatment or plan of care.

---

3   Dorsey is no longer prescribed a cane.  On December 21, 2011, Michael Kramer, M.D. rescinded the order approving Dorsey's use of a cane.  Dr. Kramer is not a party in this case.  The order contains the following note.

> Reviewed with Sergeant M. Raley patient's status, ambulatory or otherwise.  Patient repeatedly exhibits manipulative behavior with staff, particularly new employees.  Patient is ambulatory, security has seen patient walk comfortably not using his cane.  The order (written yesterday) for single cell status is canceled effective now.  Will forward not be e-mailed [sic] to CCC nurse to inform patient immediately.

ECF No. 23, Plaintiff's Attachment.   The Court notes that Dorsey's medical records contain an observation of "symptom magnification" (ECF No  14, Exhibit D) and question whether he is "histrionic."  (ECF No. 14, Exhibit B.)

Further, I was not responsible for inmate housing, cell assignments, or modifications of such." Exhibit G, ¶ 6.  Lauri Russell is not a physician. See id., ¶ 5.

**B.  State Defendants' Exhibits**

The State Defendants' verified exhibits show that Dorsey first complained about the matters at issue on December 7, 2010, when he submitted an administrative remedy request (ARP) to the Warden of WCI.  Exhibit A, Declaration of Renee M. Emerick, attached records at pages 3-34.  The ARP described his November 22, 2010 fall and expressed concerns about the medical care he had received.  Dorsey requested to "be placed in a handicap accessible unit and cell immediately." Id., p. 6.

Dee Adams, R.N., investigated the ARP.  Her inquiry included interviewing Dorsey and reviewing his medical records.  In her findings she observed that his records showed on November 24, 2010 Dorsey was "refusing to ambulate or stand," but later in the shift asked for supplies for a shower and performed his ADLs (activities of daily life) independently.  Id., pp. 7-8.  Dorsey told Nurse Adams that he wanted a handicap accessible cell because of "trouble getting around."  Nurse Adam also observed Dorsey "ambulate to and from this interview with normal gait."  Id., p. 8. After completing the investigation, she recommended dismissing the ARP and denying the request for a handicap accessible cell because it was "not a medical necessity."  Id.  The investigation report also noted Dorsey's cane was issued to assist with him with balance, not mobility or function; and observed that he was able "to independently ambulate, use the restroom, and perform [his] physical care in the form of showering, dressing, and feeding [himself]."  Id.

Dorsey filed a grievance with the Inmate Grievance Office ("IGO") which an administrative judge ("ALJ") summarized as follows:  "The Grievant complains that he suffered injuries on November 22, 2010 when he fell down stairs because WCI staff failed to confine him in housing

appropriate to his temporary dependence upon a cane for ambulating." Id. p. 35. The ALJ

reviewed Dorsey's grievances and found no fault on the part of corrections staff in regard to

Dorsey's fall on the stairs. Id. page 40. The ALJ determined Dorsey had presented "no evidence

that a physician ordered his assignment to a housing unit that does not have stairs." Id. p. 39. The

ALJ concluded that "it is wholly reasonable for the DOC to assume that someone who uses a cane

can manage the stairs, absent doctor's order to the contrary." Id. p. 40. The ALJ determined

Dorsey was "not entitled to any compensation for the fall or a special housing unit." Id. (emphasis

added).

Sergeant Brian Hammons, WCI Traffic Officer, states in his declaration that an inmate's

medical conditions are reviewed when housing unit assignments are made. Additionally, the Traffic

Office receives a weekly e-mail update from the medical department at WCI regarding the medical

status of inmates and changes thereto. Exhibit B, Declaration of Sgt. Brian Hammons, ¶ 2. The

update includes medical holds, alerts, bottom-bunk orders, cuff-in-front orders, wheelchairs, canes,

and other information the corrections staff needs to know. Id. The Traffic Office is also informed

of the duration of such medical orders. See id. The Traffic Office enters this information into the

inmate's records and it appears on the inmate's computerized records.

When notified by a housing unit or a department, such as the medical department, that

an inmate needs to be moved, the Traffic Office reviews the inmate's records to determine his

housing assignment. See id. ¶ 3. The Traffic Officer checks the inmate's medical information to

make an appropriate assignment. See id. For example, if the medical information states that an

inmate needs a bottom bunk or bottom-tier cell, the Traffic Officer specifies in the new assignment

that the inmate must be given a bottom bunk or be housed on a bottom tier. See id. If an inmate

objects to a new cell assignment for medical reasons such as needing a bottom bunk, the housing

unit notifies the Traffic Office, which then reviews the inmate's medical paper work.  If the

inmate's name does not appear on the paper work, the Traffic Officer calls the medical unit to

ascertain whether a medical order was entered after the Traffic Office received the most recent

paperwork.  See id.  Dorsey's medical records did not reflect a bottom tier or bottom bunk medical

order until after he fell on the stairs on November 22, 2010.  ECF No. 24, Exhibit A, p. 34.

## MOTION FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly

granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  The moving party must demonstrate through the

"pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

if any," that a reasonable jury would be unable to reach a verdict for the non-moving party.  See

Celotex Corp. v. Catrett, 477 U.S. 317(1986).  When this burden is met, the non-moving party then

bears the burden of demonstrating that there are disputes of material fact and that the matter should

proceed to trial.  See Matsushita Electric Industrial Company  v. Zenith Radio Corporation, 475

U.S. 574, 586  (1986).

A material fact is one that "might affect the outcome of the suit under the governing law."

Anderson v. Liberty Lobby, Inc.,477 U.S. 242, 248 (1986).  A genuine issue over a material fact

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  Id.  In considering a motion for summary judgment, a judge's function is limited to

determining whether sufficient evidence exists on a claimed factual dispute to warrant submission

of the matter to a jury for resolution at trial.  Id. at 249.  Further, the court must construe the facts in

the light most favorable to the party opposing the motion.  See United States v. Diebold, 369 U.S.

654, 655(1962); In re: Apex Express Corporation, 190 F.3d 624, 633 (4th Cir. 1999).

A federal court must liberally construe pleadings where, as here the plaintiff is a self-represented litigant, in order to allow development of potentially meritorious cases.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.

**DISCUSSION**

**A.  ADA Claims**

The Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  Americans with Disabilities Act, 42 U.S.C. §12132.  Title II of the ADA "authorizes suits by private citizens for money damages against public entities that violate § 12132." United States v. Georgia, 546 U.S. 151, 154 (2006).  A plaintiff seeking relief under either the ADA must present sufficient evidence to establish that 1) he has a disability, 2) he is otherwise qualified to receive the benefits of the public services, programs, or activities, and 3) he was denied the benefits of such services, programs, or activities, on the basis of his disability.  See Constantine v. Rectors & Visitors of George Mason University, 411 F.3d 474, 498 (4th Cir. 2005); Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999); Doe v. University of Maryland Medical Systems Corporation, 50 F.3d 1261, 1265 (4th Cir. 1995).  The ADA applies to programs and services of a public entity, and a plaintiff has the burden of showing that his disability "played a motivating role" in the challenged action.  Id. at 468–69.

A disability is defined under the ADA under 42 U.S.C. § 12102(2)(A) as: 1) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; 2) a record of such impairment; or 3) being regarded as having such an impairment.  In

determining whether an impairment is, in fact, a disability, a fact-intensive look at an individual

with an alleged disability must be undertaken to determine: 1) the nature and severity of the

impairment; 2) the duration or expected duration of the impairment; and 3) either the actual or the

expected long term impact of or result from the impairment.  See 29 C.F.R. § 1630.2 (j) (2).

Dorsey fails to meet this standard.  First, he does not show that he is a qualified individual

with a disability or that Defendants are public entities amenable to suit under the ADA.  To be

considered a "qualified individual with a disability," Dorsey must demonstrate that he has a

"disability" which is defined as "a physical or mental impairment that substantially limits one or

more major life activities of such individual. . ." 42 U.S.C. § 12102(1)(A).  Major life activities

include caring for oneself and walking, Id. § 12102(2)(A).  Dorsey fails to allege in the Complaint

that he is substantially limited in his abilities to care for himself and to walk when assisted with a

cane.[4]  His medical records indicate that he used a cane to ambulate without problems.

See Exhibit F.[5]  There is no showing here that Dorsey has a disability as defined under the ADA or

that he was denied a benefit because of such a disability. [6]

---

[4]  Dorsey's authorization for a cane was rescinded after Defendants filed their dispositive pleadings and corrections officials observed him walking comfortably without a cane. ECF No. 23, Plaintiff's Attachment.   To the extent Dorsey disputes the rescission as impermissible retaliation, he may raise his claims in a separate complaint.  The Court expresses no opinion about the merits of such a claim.

[5]  To the extent Dorsey claims that a denial of medical treatment violates his rights under the ADA, his claim is unavailing.  Although the Fourth Circuit has not addressed this issue by published opinion, unpublished cases from this circuit and cases from other circuits indicate that a prisoner may not state a claim under the ADA for a lack of medical treatment.  See, e.g. Miller v. Hinton, 288 Fed. Appx. 901 (4th Cir. 2008) (prison's alleged denial of access to colostomy bags and catheters by inmate, who was a paraplegic confined to a wheelchair who used such supplies for urinary bladder control, did not constitute disability discrimination in violation of ADA absent a showing that inmate was treated in that manner because of his disability); Fitzgerald v. Correctional Corporation of America, 403 F.3d 1134, 1144 (10th Cir. 2005) (inmate's claims under ADA were properly dismissed for failure to state claim as they were based on medical treatment decisions); Spencer v. Easter, 109 Fed. Appx. 571, 573 (4th Cir. 2004) (failure to provide timely refills of prescription drugs did not amount to an ADA violation where there was no showing that it was done based on prisoner's disability).  There is neither allegation nor evidence Dorsey suffered discrimination due to a disability.

[6]  Dorsey's Complaint in regard to the State Defendants is that he was not assigned to a bottom bunk.  Such assignment is not a service, program, or activity as contemplated by the ADA.

Additionally, none of the Defendants is a "public entity" as defined under the ADA.  The term "public entity" is defined as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or local government. . . ."  42 U.S.C. § 12131(1)(A)-(C).  Defendants Dr. Joubert is an employee of CMS, and Ms. Russell is a former employee of Corizon, a private medical provider under contract with the state to provide medical services to inmates.  The State Defendants are being sued in their individual capacities and are not public entities as defined by the ADA.  Consequently, Defendants are not subject to liability under the ADA.  For all these reasons, there are no genuine issues of material fact presented and the Medical and State Defendants are entitled to summary judgment in their favor on the ADA claim.

**B.  Eighth Amendment**

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  When prison officials  show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation.  Id. at 104.  The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  See Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  A defendant must know of and disregard an excessive risk to inmate health or safety.  "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  Farmer v. Brennan, 511 U. S. 825, 837 (1994).  Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms.  See Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Mere negligence or malpractice does not rise to a constitutional level.  See Miltier v. Born, 896 F.2d 848 (1990).  An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action.  See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).

Dorsey's claim against Dr. Joubert alleges negligent medical care and does not amount to a claim of constitutional proportion.   Viewing the facts in the light most favorable to Dorsey, the Court finds no genuine material issues exist as to whether Dr. Joubert acted with requisite deliberate indifference to his serious medical concerns.   Further, Wardens, Assistant Wardens, and Chiefs of Security play no role in providing medical care to inmates, nor are they qualified to do so.  ECF No. 24, Exhibit A, Declaration of Renee M. Emerick, ¶ 3.  Trained professional medical staff make all decisions regarding an inmate's care and medical needs.  See id.  Thus, corrections personnel were entitled to rely on the advice of medical professionals when assigning Dorsey to an appropriate cell. Although Dorsey claims he wrote to the Warden concerning the need for a bottom bunk prior to his fall, the State Defendants properly relied on medical providers to order the special placement. Notably, once a medical order was issued after Dorsey's fall on November 22, 2010, the State Defendants assigned him to a bottom bunk.  Similarly, and as noted above, Lauri Russell, Corizon's medical administrator, had no responsibility or authority in regard to Dorsey's medical treatment or housing placement.  Exhibit G, Affidavit of Lauri Russell.  Consequently, Dr Joubert, Lauri Russell, former Warden J. Phillip Morgan, former Assistant Warden Harry Murphy, former Chief of Security Michael Thomas, and Traffic Officer SGT Brian Hammons are entitled to summary judgment as to this claim.

### C. Respondeat Superior

The doctrine of respondeat superior generally is inapplicable to § 1983 suits; an employer or supervisor is not liable for the acts of employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694, (1978); Love–Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004).  Insofar as Dorsey wants to hold Warden J. Phillip Morgan, former Assistant Warden Harry Murphy, former Chief of Security Michael Thomas, and Traffic Officer SGT Brian Hammons culpable under a theory of supervisory liability, his claims are unavailing.  Supervisory liability under § 1983 must be supported with evidence that: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the Plaintiff.  See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001), citing Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).  There is no suggestion that any State Defendant was aware of a "serious" medical condition and deliberately ignored it or tolerated any subordinate doing so.  To the contrary, Dorsey's December 2010, ARP was addressed and investigated.  Warden Morgan had no actual or constructive knowledge of the incidents in question and there are no grounds for assigning supervisory liability.

To the extent the Complaint names Corizon, the contractual medical provider,[7] based solely upon vicarious liability, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior.  See Austin v. Paramount Parks, Inc., 195 F.3d 715, 727-28 (4th Cir. 1999); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982); Clark v. Maryland Department of Public Safety and Correctional Services, 316 Fed. Appx. 279, 282 (4th Cir. 2009).  Accordingly, there is no legal basis to hold Corizon liable in this case and summary judgment will be entered in favor of Corizon.

## CONCLUSION

For reasons stated above, the Court finds Defendants are entitled to summary judgment in their favor as a matter of law.  A separate Order follows.

June 26, 2012

/s/

_____
George Levi Russell, III
United States District Judge

---

[7] The court takes notice that Corizon is a private corporation that contracts with the State of Maryland to provide medical services to inmates at certain state institutions.  Corizon administers medical care only through its agents and employees.